UNITED STATES of America, Plaintiff,

v.

Piyaroth KAYARATH, Defendant.

No. 94–10128–02.

United States District Court,
D. Kansas.

April 11, 1997.

Thomas J. Weilert, Wichita, KS, for defendant.

David M. Lind, Office of U.S. Atty., Wichita, KS, for U.S.

### Memorandum and Order

WESLEY E. BROWN, Senior District Judge.

Defendant Piyaroth Kayarath was convicted by a jury on one count of interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951 and § 2, and one count of using or carrying a firearm during and in relation to a crime of violence and in the course of that violation causing the death of a person through the use of a firearm, which killing was a murder, in violation of 18

U.S.C. § 924(j)(*l*)[1] and § 2. On April 10, 1997, the court held a hearing on defendant's motion for new trial. The court orally denied the motion at the conclusion of the hearing. This written memorandum will supplement the court's oral ruling.

■ Defendant's first argument is that the jury instructions were erroneous because they did not require the government to prove under § 1951 that the interference with interstate commerce was "substantial." As the government points out, this argument has been rejected by the Tenth Circuit. In *United States v. Bolton*, 68 F.3d 396, 399 (10th Cir.1995), the court held that despite *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), "all the government need show is a *de minimis* effect on interstate commerce in order to support a conviction under the [Hobbs] Act." Thus, the instructions on interstate commerce were consistent with binding precedent and do not provide grounds for a new trial.

■ Defendant's second argument is that the court erred in its response to a jury question regarding the elements of aiding and abetting. Although counsel concedes he did not object when the response was given, he nevertheless contends it constituted plain error because it permitted the jury to convict the defendant on the § 924(i)(1) charge based solely on his participation in the robbery. Defendant's third argument, related to the second, is that the evidence was insufficient to support the conviction under § 924(i)(1).

The standard for determining sufficiency of the evidence is whether any rational factfinder could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In making this determination, the court must view the evidence and all reasonable inferences therefrom in the light most favorable to the prosecution. *Id.* This standard recognizes that it is the responsibility of the jury to resolve conflicts in the testimony, to weigh the evi-

dence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*

The elements of an offense under § 924(i)(1) were set forth in the court's instructions and will not be repeated here. Admittedly, the elements are somewhat convoluted because the offense encompasses three potentially separate offenses: an underlying crime of violence (in this case robbery under § 1951), using or carrying a firearm during and in relation to the crime of violence (§ 924(c)), and murder (§ 1111). Additionally, because defendant was charged with responsibility for the offense under 18 U.S.C. § 2, the elements of aiding and abetting must also be considered.

The evidence at trial was clearly sufficient for a rational jury to conclude that defendant aided and abetted in the robbery of the Mandarin restaurant and in using or carrying a firearm during and in relation to the robbery. (In fact, defense counsel conceded in his closing argument that Kayarath participated in the robbery.) It was also sufficient to show that in the perpetration of the robbery one of defendant's accomplices, Bountaem Chanthadara, used a firearm to murder Barbara Sun, one of the victims of the robbery. There was no specific evidence, however, that defendant Kayarath was in the room or knew about the killing when it occurred or that he did any act to encourage it. Defendant contends that he cannot be convicted of Count Two in the absence of proof that he knew the killing was going to take place or that he did some act to aid or encourage the commission of the murder.

■ At trial, the government argued that Kayarath aided and abetted Chanthadara in the commission of the § 924(i) offense. To be guilty of aiding and abetting a crime, the defendant must willfully associate himself with the criminal venture and seek to make it succeed through some action on his part. *United States v. Esparsen*, 930 F.2d 1461, 1470 (10th Cir.1991), *cert. denied*, 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992).

---

1. Due to an apparent clerical error, two subsection (i)'s were adopted in § 924. The error has now been corrected, with the provision in question redesignated as subsection (j). For the sake of consistency with the indictment, the court refers to the provision in this opinion as subsection "(i)."

Thus, aiding and abetting generally requires a showing that the defendant shared in the principal's intent to commit the offense and that he participated in some manner to assist its commission. *United States v. Fischel,* 686 F.2d 1082, 1087 (5th Cir.1982). For a principal to be guilty under § 924(i)(1) requires a showing that in the course of a violation of § 924(c), he caused the death of a person through the use of a firearm, which killing was a murder as defined in § 1111. At first glance this would seem to require evidence that a defendant aided or encouraged the killing before he could be considered an aider and abettor. Because of the felony murder doctrine, however, this is not necessarily the case.

Murder is the unlawful killing of a human being with malice aforethought. 18 U.S.C. § 1111. Several circuits, including this one, have suggested that the term "malice aforethought" in § 1111 embodies the common law felony murder rule, under which a person who commits a dangerous felony (such as robbery) may be guilty of murder if a death occurs in the course of the felony, even if the death is unintended and unforeseen. *See Montoya v. U.S. Parole Commission,* 908 F.2d 635, 638 (10th Cir.1990). "Felony murder is included under this definition of 'malice aforethought' because the element of malice ... is supplied by intent to commit the underlying felony." *Id.* at 642 (Tacha, J., dissenting). *See also United States v. Chischilly,* 30 F.3d 1144, 1160 (9th Cir.1994) (under a felony murder charge the commission of the underlying offense substitutes for malice aforethought); *United States v. Thomas,* 34 F.3d 44, 48 (2nd Cir.1994) (the government can demonstrate malice aforethought by showing that the killing was committed in the commission of a robbery); *United States v. Flores,* 63 F.3d 1342, 1371 (5th Cir.1995) (to be guilty of first degree murder under § 1111, the defendant need only have intended to commit the underlying felony; no other mens rea is required.) Under this common law view, a co-participant in a dangerous felony that resulted in death was also liable for murder notwithstanding that he did not participate in the killing and did not intend for it to occur.[2] *See e.g., Montoya,* 908 F.2d at 638–39. *See also Schad v. Arizona,* 501 U.S. 624, 654, 111 S.Ct. 2491, 2508, 115 L.Ed.2d 555 (White, J., dissenting) ("Unlike premeditated murder, felony murder does not require that the defendant commit the killing or even intend to kill, so long as the defendant is involved in the underlying felony.") The instructions given in the instant case reflected this common law view of "malice aforethought."[3]

**2.** This view is analogous to *"Pinkerton* liability," under which one who conspires with another to commit an offense "can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946) for new trial appears to be based on this theory, inasmuch as it refers to the "co-conspirators" involved in the offense and argues that Kayarath should have known it was "inevitabl[e]" that someone would get shot in the robbery. Although the evidence was arguably sufficient to hold defendant Kayarath responsible for Count Two under a *Pinkerton* theory, the government did not request that the jury be instructed on this theory and the court did not give such an instruction. *See Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949) (a verdict on a Pinkerton theory requires submission of the predicate facts to a jury).

**3.** The court recognizes that § 1111 can be interpreted to require malice in the act of killing.

Under this view, the significance of felony murder in § 1111 is limited to distinguishing between first and second degree murder. Thus, first and second degree murder would each require a showing that the defendant acted with malice aforethought, but to constitute first degree murder the government would also have to show either: (1) that the defendant acted with premeditation; or (2) that the murder was committed in the perpetration of an enumerated dangerous felony. *See United States v. Sides,* 944 F.2d 1554, 1557 (10th Cir.1991) ("first degree murder thus requires proof of: either a premeditated, malicious, and unlawful killing of a human being, or a malicious and unlawful killing of a human being committed in the perpetration of a robbery.") *Cf. United States v. Bedonie,* 913 F.2d 782, 787–88 n. 3 (10th Cir.1990) (trial court's instructions on felony murder required a showing that the killing was done with malice aforethought). *See also United States v. Lilly,* 512 F.2d 1259, 1261 n. 4 (9th Cir.1975) (all murder, including felony murder, requires malice aforethought). If § 1111 requires malice in the act of killing and does not permit the defendant's intent to commit robbery to substitute for it, it follows

Thus, even if defendant Kayarath did not participate in the killing and did not intend for it to occur, he could still be liable for murder under the felony murder rule of § 1111 based upon his willing participation in the robbery. *See* W. LaFave & A. Scott, *Criminal Law* (2nd Ed. 1986), § 6.7 at 581–82 ("Brief mention should also be made here of the somewhat unique results as to accomplice liability which may flow from application of the felony-murder . . . rule[ ]. Under [this doctrine], the actor in committing a felony . . . is liable for a killing which occurs in the execution of such [a crime], and there is no requirement that he have intended the homicide or have even negligently brought it about. This being the case, it is not surprising that one who intentionally aids or encourages the actor in the underlying crime may likewise be convicted of felony murder . . . not withstanding his lack of intent that death result.") *Cf. Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) (Death penalty for persons convicted under Arizona felony murder law did not violate the Eighth Amendment where the persons did not kill or intend to kill the victims but did have major involvement in the felony and acted with reckless indifference to human life).

▮ As previously stated, to violate § 924(i)(1) as a principal a defendant must, in the course of a § 924(c) violation, "cause[ ] the death of a person through the use of a firearm. . . ." It might be argued that this requires the government to show that the defendant aided or encouraged the principal in causing the death of the victim. But because § 924(i) incorporates § 1111 and its felony murder doctrine, a principal can violate § 924(i) even absent a specific intent to kill. It follows that aiding and abetting does not require such an intent and that, like a principal, an aider and abettor can be liable for murder based upon his intent to commit robbery if a co-participant in the robbery causes the death of the victim through the use of a firearm. Thus, the court concludes that the evidence was sufficient to support the verdict of guilty on Count Two and that

that a defendant could not be convicted of aiding and abetting such an offense in the absence of a

the response to the jury's question on aiding and abetting accurately stated the law.

*Conclusion.*

Defendant's motion for new trial (Doc. 505) is DENIED.

similar specific state of mind.